FIRST NAT. BANK OF WINONA v. BUFFALO BREWING CO.

(Supreme Court, Special Term, Erie County. May 27, 1915.)

1. JUDGMENT ☜⇒652—QUESTIONS CONCLUDED.

Under Negotiable Instruments Law (Consol. Laws, c. 38) §§ 91, 93, defining a holder in due course as one who has taken an instrument complete and regular on its face before its maturity, in good faith, for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it, and declaring that, where the transferee receives notice of any infirmity in the instrument or defect in the

---

☜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

title of the person negotiating it before he has paid the full amount, he will be deemed a holder in due course only to the extent of the amount previously paid, a default judgment obtained by an assignee of bonds and interest coupons, maturing at different dates, for coupons due, does not estop the debtor from challenging the assignee's good faith in acquiring title to coupons subsequently maturing, where the bonds and coupons were assigned to the assignee as collateral, under an arrangement that the assignee should collect the proceeds of the coupons as they matured and apply the proceeds on the indebtedness of the assignor.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1164; Dec. Dig. ☞652.]

2. BILLS AND NOTES ☞508—ACTIONS—EVIDENCE.

In an action on bonds with interest-bearing coupons maturing at different times, for coupons matured, brought by an assignee of the bonds and coupons, evidence of defect in the assignee's title to the coupons sued on was admissible in support of the debtor's answer denying that the assignee was the owner and tracing the title of the bonds and coupons from the time of their issuance.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1728–1732; Dec. Dig. ☞508.]

3. BILLS AND NOTES ☞497—ACTIONS—EVIDENCE.

Where a transfer of a negotiable instrument is valid, and the transferee holds the legal right to the demand, the maker, to defeat recovery, must show the bad faith of the transferee, or notice of facts affecting the validity of the instrument.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. ☞497.]

4. BILLS AND NOTES ☞452—ACTIONS—EVIDENCE.

A maker of a negotiable instrument, when sued by a transferee thereof, may show the transferee's bad faith, or that he has not a legal title sufficient to sue on the instrument.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1303, 1352–1364, 1367–1376; Dec. Dig. ☞452.]

5. EVIDENCE ☞157—PRODUCTION OF NEGOTIABLE INSTRUMENTS—LEGAL EXCUSE FOR NONPRODUCTION.

In an action on bonds and interest coupons, brought by an assignee, the bonds and coupons should be produced, or legal excuse given for their nonproduction.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460–470; Dec. Dig. ☞157.]

Appeal from City Court of Buffalo.

Action by the First National Bank of Winona against the Buffalo Brewing Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Love & Keating, of Buffalo, for appellant.

Riordan & Batt, of Buffalo, for respondent.

TAYLOR, J. This is an appeal from a judgment of the City Court of Buffalo, rendered in favor of the plaintiff after a trial by the court without a jury. The plaintiff claimed that it was the lawful holder of certain bonds of the defendant. Attached to the bonds were interest coupons maturing at different times, and the evidence tended to show that when and as the coupons matured they became the property of the plaintiff. These bonds and coupons had been assigned to the plaintiff

by the Union Fibre Company as collateral security for an indebtedness, and it was arranged that the plaintiff should collect the proceeds of the coupons as they matured and apply the moneys thus collected upon the indebtedness of the Union Fibre Company.

In July, 1911, certain coupons in the possession of the plaintiff became due, and the plaintiff brought an action against the defendant for their value, and recovered a judgment by default. Plaintiff now urges that this judgment estops the defendant from asserting any defense to this action, which is on account of coupons maturing subsequent to the default judgment. That judgment established for all time, as between these parties, that the bonds then in suit and the coupons then sued upon were valid and existing obligations of the defendant. The inquiry here, therefore, is directed to two points, viz.: (1) Are the bonds described in this action the identical bonds described in the former action? and (2) may the defendant show, notwithstanding the former judgment, that the plaintiff is not a holder in due course of the coupons which are the subject of this action?

[1] It may be assumed that the evidence taken on the trial established the fact that the bonds here involved were identical with those described in the former action. This brings us to the question whether the defendant is estopped by the former judgment from inquiring into the good faith of the plaintiff in acquiring the coupons which are the subject of this suit, or into the question whether or not the plaintiff has a legal right to sue.

In considering this question, let us assume that the bonds had been converted by the Union Fibre Company, and that when the plaintiff brought the first action it had no notice or knowledge of the fraud. In that case it would be entitled to judgment for the coupons to which it then had title. Let us further assume that at some time subsequent to the former action the plaintiff became fully informed of the fraud of the Union Fibre Company, and that thereafter the plaintiff obtained title to the coupons involved in this action. Can it be said that, because the plaintiff was a holder in due course of the first set of coupons, it was necessarily a holder in due course of the set here involved? The Negotiable Instruments Law (section 91) defines a holder in due course as one "who at the time of the negotiation to him had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Was the plaintiff such a holder at the time it acquired title to the second set of coupons? Clearly this question was in no wise involved or decided in the first judgment. The plaintiff is a holder in due course of such coupons only as are applied to the indebtedness of the Union Fibre Company before notice of a defect in the title thereto is brought home to the plaintiff. Neg. Inst. Law, § 93. The defendant was therefore not estopped by the former adjudication from challenging the plaintiff's good faith in acquiring title to the coupons in this action.

[2] It is claimed, however, by the plaintiff, that, irrespective of the former adjudication, the evidence sought to be introduced by defendant, showing a defect in the title to the coupons, was inadmissible for any purpose, and that the trial judge was right in excluding it. Plaintiff

relied upon the presumption of ownership arising from its possession of the coupons. The defendant by its answer denied that the plaintiff was the owner, and attempted to trace the title of the bonds and coupons from the time of their issuance. This line of proof was excluded, and on the record before us it is impossible to say whether or not the defendant would have been successful in challenging the plaintiff's title and good faith if the questions had been allowed. If there was a defense to this action, it should have been heard, and I think the trial judge erred in refusing to permit the defendant to trace the title to these bonds and coupons. Hays v. Hathorn, 74 N. Y. 486. The plaintiff must recover, if at all, upon the strength of his own title, not by showing merely that the defendant is liable to somebody in the world for the value of the coupons.

[3, 4] It is, of course, the law of this state that where the transfer of a negotiable instrument is valid, and the plaintiff holds the legal right to the demand, a defendant has no legal interest to inquire further, as a payment to or recovery by a plaintiff occupying this position would protect the defendant against any other claim on the instrument that might be made by any party; and in such a case the considerations and conditions upon which it was given are of no materiality, as bearing upon the plaintiff's right to maintain the action. Nothing short of mala fides or notice thereof will enable a maker of a negotiable instrument to defeat an action brought by an apparently regular holder, especially where there is no defense as to the indebtedness. But a maker may surely show such mala fides, or that the plaintiff has not a legal title sufficient to enable it to bring an action on the instrument.

If the pleadings were not broad enough to cover the defenses suggested the defendant might have moved to amend its answer, and this amendment might have been granted upon proper terms.

[5] The bonds were not produced upon the trial, but secondary evidence as to their contents was given. It does not appear that they are lost or destroyed, but are in the possession of the plaintiff. Upon a new trial these bonds should be produced, or legal excuse given for their nonproduction.

The judgment is reversed, for the reasons above given, and a new trial granted on June 8, 1915, at 10 o'clock in the forenoon, or at such other times as the parties may agree upon. Costs of this appeal to the appellant to abide the event.